**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| THE SHOSHONE INDIAN TRIBE OF THE WIND RIVER RESERVATION, WYOMING,<br>*Plaintiff,*<br>v.<br>THE UNITED STATES,<br>*Defendant.* | No. 458-79 L<br>Judge Hewitt |
| THE ARAPAHO INDIAN TRIBE OF THE WIND RIVER RESERVATION, WYOMING,<br>*Plaintiff,*<br>v.<br>THE UNITED STATES,<br>*Defendant.* | No. 459-79 L<br>Judge Hewitt |

**FIRST AMENDED PETITION – NORTHERN ARAPAHO INDIAN TRIBE**

The Northern Arapaho Indian Tribe (the Tribe) alleges as follows:

ALLEGATIONS APPLICABLE TO ALL CLAIMS

1. This petition is filed pursuant to 28 U.S.C. § 1491 (1976) and 28 U.S.C. § 1505 (1976).

2. This petition does not assert any claim, or seek to recover any damages with respect to any claim now pending before this Court or any other Court.

3. The Tribe is a federally recognized Indian Tribe, residing on the Wind River Indian Reservation in Wyoming.

4. In 1851, by the Treaty of Fort Laramie, 11 Stat. 749, the United States recognized the title of the Tribe to large tracts of land on the Platte River. On May 10, 1868, the Tribe signed a treaty with the United States by which the tribe relinquished title to these lands in return for a "permanent home." Treaty of May 10, 1868, ratified July 25, 1868, Art. II, Stat. 655, 657.

5. Since 1878, the Tribe has been the beneficial owner of an undivided one-half interest in the Wind River Reservation.

6. By Act of March 3, 1905, Ch. 1452, 33 Stat. 1016, the United States through a "cession in trust" opened the northern two-thirds of the Reservation to non-Indian settlement. Under the Act the United States paid nothing for the cession, but agreed to dispose of surplus land to settlers with the proceeds to go to the Tribes. The Tribes remained the equitable owners of the land, including all mineral resources, until actually disposed of by the United States. United States v. Shoshone Tribe, 304 U.S. 111, 114 (1938). See Ash Sheep Company v. United States, 252 U.S. 159 (1920). There were known oil and gas resources within the "opened" part of the Reservation. By the Act of August 21, 1916, Ch. 363, § 1, 39 Stat. 519, Congress empowered the Secretary of the Interior to lease the "opened" land for oil and gas "under such terms and conditions as shall be by him prescribed" with the proceeds of royalties from the leases to be "applied to the use and benefit of said Tribe . . .".

7. Little of the land opened for non-Indian settlement by the 1905 Act was actually settled by non-Indians. By Act of July 27, 1939, Ch. 387, § 4, 53 Stat. 1129, (codified at 25 U.S.C. § 575, (1976)), all undisposed of lands in the opened portion of the Reservation, not

within a reclamation project, were restored to the Tribes. In the meantime, however, in 1920, Congress authorized the Riverton Reclamation Project. It embraced about 332,000 acres. Act of June 5, 1920, Ch. 320, 41 Stat. 874, 915, and Act of March 4, 1921, Ch. 161, 41 Stat. 1367, 1404. The Project was constructed and through the years about 100,000 acres of the 332,000 acres were sold and the proceeds credited to the Tribes. An additional 70,500 acres, not required for the project, ultimately were restored to the Tribes under Section 4 of the Act of August 15, 1953, Ch. 509, 67 Stat. 592, 613. Under Section 5 of that Act, the remaining 161,520 acres were ceded to the Government subject to a 90% interest of the Tribes to the proceeds of mineral leases to be administered under the "mining and mineral leasing laws of the United States." By Act of August 27, 1958, § 1, 72 Stat. 935, the entirety of the mineral interests under those lands were "declared to be held by the United States in trust for the Shoshone and Arapahoe Tribes" and were required to be administered under the Indian Leasing Act of May 11, 1938, Ch. 198, 52 Stat. 347, (codified at 25 U.S.C. §§ 396a-396g (1976)), the general statute governing tribal oil and gas.

8. By Act of May 19, 1947, Ch. 80, 61 Stat. 102, (codified at 25 U.S.C. § 611 et seq. (1976)), the Secretary of the Interior was directed to divide the trust funds on deposit in the Treasury of the United States to the joint credit of the Shoshone and Arapahoe Tribes of the Wind River Reservation into separate accounts. Since the effective date of that Act, all income derived from tribal property held in common by the two Tribes has been divided evenly. From each Tribe's one-half, 85% is paid in a monthly per capita to the respective members of the Tribe. The remaining 15%, referred to as the "15% fund" is maintained in the Treasury of the United States or under the control of the Secretary of the Interior.

9. Under the Treaty of May 10, 1868, 15 Stat. 655, the Trade and Intercourse Act as amended, 25 U.S.C., § 177, (1976), the Commerce, War and Treaty powers of the Constitution, the Act of August 21, 1916, 39 Stat. 519, 25 U.S.C. §§ 396a-396g (1976), and the decisions of the United States Supreme Court and this Court, the United States has a fiduciary duty to the Tribe requiring that it exercise "the most exacting fiduciary standards" in managing the Tribes' land and mineral estate and trust funds, Navajo Tribe of Indians v. United States, 176 Ct. Cl. 502, 507 (1966).

10. The Tribe at all times since 1878, has been the beneficial owner of funds, real property and mineral interests held in trust and managed by the United States for the Tribe.

11. In breach of its fiduciary and statutory duties to the Tribe, the defendant, for the entire period, has failed to manage plaintiff's trust funds as a prudent administrator and has failed to manage or administer the Tribes' mineral and other income producing property in a manner consistent with its superior skill and knowledge or even at least as well as an informed owner of such property.

## CLAIM I

## (FAILURE OR DELAY IN COLLECTING FUNDS DUE TO THE TRIBE)

12. Defendant, at all times relevant, has been under fiduciary and statutory obligations to collect funds owing to the Tribe arising from the use or lease by Defendant or third parties of the Tribe's mineral estate, including but not limited to oil, gas, uranium, and gravel.

13. In breach of its fiduciary duty to the Tribe and to the Tribe's detriment, Defendant has delayed unreasonably, or failed to collect, such funds.

CLAIM II

(DELAY IN DEPOSITING)

14. On information and belief, the Tribe alleges that Defendant, in breach of its fiduciary duty to the Tribe and to the Tribe's detriment, delayed for unreasonable periods of time depositing the Tribe's funds in interest-bearing accounts.

CLAIM III

(HOLDING TRUST FUNDS IN THE TREASURY
AT INADEQUATE INTEREST)

15. During a major part of the period in suit, Defendant has held Plaintiff's trust funds in its treasury at a rate of four percent per annum simple interest. Interest earned in the Treasury is segregated into separate accounts and no interest is paid by the United States on the accounts.

16. During relevant times, there were readily available for acquisition with the Tribe's trust funds, pursuant to 25 U.S.C., § 162a (1976), various obligations of the Defendant and its agencies, as well as bank certificates or obligations guaranteed or secured as required by 25 U.S.C., § 162a carrying interest rates higher than the four percent.

17. Defendant breached its fiduciary duty to the Tribe's detriment by, in effect, borrowing tribal trust funds for its own purposes and benefit and by failing to invest such funds and the interest on such funds to earn maximum income for the Tribe.

CLAIM IV

(INVESTMENT AT INADEQUATE RATES)

18. Defendant invested certain of the Tribe's trust funds in various governmental and private securities guaranteed or secured as required by 25 U.S.C., § 162a. On information and

belief, the Tribe alleges that Defendant did so in breach of its fiduciary duty to the Tribe and to the Tribe's detriment in that at the time the investments were made other securities or obligations of the same or similar type, guaranteed or secured as required by 25 U.S.C., § 162a, were readily available for investment at higher interest rates.

CLAIM V

(REVERSE SPENDING)

19. The Tribe alleges and believes that Defendant has consistently made expenditures from the Tribe's interest-bearing funds or investments returning a higher yield when lower yield funds or funds bearing no interest were available.

CLAIM VI

(MISUSE OF MISCELLANEOUS REVENUES)

20. In breach of its fiduciary duty to the Tribe and to the Tribe's detriment, Defendant had failed to deposit tribal funds in the United States Treasury and has used such funds derived from the Tribe's trust property for purposes not for the exclusive benefit of the Tribe.

21. Defendant, through the Secretary of the Interior, manages a tribal credit program. The Tribe alleges on information and belief that Defendant, in breach of its fiduciary duty, and to the Tribe's detriment, has mismanaged the program by, among other things, keeping large sums of tribal money in non-interest-bearing checking accounts when proper management would require such funds to be placed at interest.

CLAIM VII

(MISMANAGEMENT OF PLAINTIFF'S OIL AND GAS ESTATE)

22. At all relevant times, the Tribe has been the beneficial owner of an undivided one-half interest in substantial oil, gas and mineral deposits on the Reservation. Under the Treaty of May 10, 1868, 15 Stat. 655, the Trade and Intercourse Act as amended, 25 U.S.C. § 177 (1976), the statutes regulating oil and gas leasing on Indian lands including but not limited to 25 U.S.C. §§ 396a-396g, and the Act of August 2, 1916, 39 Stat. 519, as well as the regulations under such acts (including 25 C.F.R. Parts 171 and 184 (1979) and 30 C.F.R. Part 221 (1978)), the United States has the obligation to manage the tribal oil and gas resource in a manner consistent with defendant's superior skill and knowledge in the area of oil and gas management and in all instances at least equal to the management of oil and gas lands by an informed owner of such lands. Defendant, in breach of its statutory and trust responsibility to the Tribe, and to the Tribe's detriment, has mismanaged plaintiff's oil and gas estate as set out in the following subparagraphs:

(a) Defendant, through its Bureau of Reclamation, has burdened the Tribe's oil and gas estate and interfered with its development; inconsistent with its fiduciary and statutory obligations and the interests of the Tribe, Defendant has applied regulations and restrictions employed on public lands of the United States to tribal lands, in particular, to tribal oil and gas lands within reclamation areas;

(b) Defendant has excluded from oil and gas leases river bottoms and lake bottoms owned by the Tribe;

(c) Defendant has held large sums of money received as deposits for bids for the right to lease the Tribe's oil and gas without placing the same at interest for the benefit of the Tribe;

(d) Defendant has failed to require oil and gas lessees to comply with the terms of their leases on tribal lands and has failed to oversee, monitor and administer said oil and gas leases on a basis at least equal to the management of oil and gas lands by the informed owner of oil and gas lands in, among others, the following respects:

(i) Defendant has not required that royalties paid under the Tribe's oil and gas leases be the stated percentage of the fair market value of the oil and gas produced, but in violation of defendant's own regulations has consistently accepted the lessees' reports of price received for the gas or oil as the value thereof with the result that the Tribe lost significant revenues to which it is entitled under its leases and defendant's own regulation;

(ii) Where natural gas has been produced, Defendant has consistently accepted the interstate controlled price of natural gas or prices lower than the controlled price as the value of the gas rather than the intrastate price which during a substantial portion of the time at issue has been substantially higher. As a result, the Tribe has received its royalty percentage based upon a small fraction of the actual value of the gas produced;

(iii) Defendant has not required that lessees account for and pay royalties on the value of liquid hydrocarbon substances produced and saved on the leased premises as required by the regulations and the provisions of the leases and has thereby failed to obtain for the Tribe the highest price permitted under the lease;

(iv) Defendant has not required prompt payment of royalties on a monthly basis as required by the terms of the leases, but has permitted lessees to pay royalties and rentals long after their due dates;

(v) Defendant has failed to terminate leases in accordance with its own lease terms and regulations, although lessees have committed serious breaches for which an informed owner would have required cancellation; nor has Defendant required payment of penalties as required by 30 CFR § 221.54 (1978), incorporated into provision 3(g) of the leases;

(vi) Defendant has failed to require lessees to exercise reasonable diligence in drilling and operating wells for oil and gas on tribal land as provided in paragraph 3(f) of the leases and as required by Federal regulation. 25 C.F.R. § 184.22 (1979). As a result of this failure and refusal, the Defendant has permitted lessees to hold leases on tribal land without development for years;

(vii) Defendant has failed either to require drilling and production of wells to offset and protect tribal leases from drainage, or to require the lessees to pay compensatory royalties.

CLAIMS FOR RELIEF

The Tribe Prays this Court:

1. For a determination that Defendant is liable to the Tribe in damages for the injuries and losses caused through violations of Defendant's fiduciary and statutory responsibilities to the Tribe set out above.

2. That Defendant be ordered to render such accountings of its management and handling of the Tribe's funds and mineral estate as are appropriate in aid of the Court's determination of the specific amount of money damages.

3. For a determination of the amount of damages due the Tribe.

4. For such further relief as the Court may deem just.

Dated: March 28, 2006.

Respectfully submitted,

s/Richard M. Berley
RICHARD M. BERLEY
Ziontz, Chestnut, Varnell,
Berley & Slonim
2101 4th Avenue, Suite 1230
Seattle, WA 98121
(206) 448-1230 (Telephone)
(206) 448-0962 (Facsimile)
rberley@zcvbs.com
*Counsel of Record for Northern Arapaho Tribe*

**CERTIFICATE OF SERVICE**

I certify that the foregoing pleading is to be served on Terry M. Petrie, counsel of record for the United States, and Harry R. Sachse, counsel of record for the Eastern Shoshone Tribe, contemporaneously with this filing via the Court's electronic filing system.

s/Richard M. Berley
*Counsel of Record for Northern Arapaho Tribe*